2012 Ark. App. 370

**Alvin M. BECK, Appellant**

v.

**INTER CITY TRANSPORTATION, INC., Appellee.**

**No. CA 11–846.**

Court of Appeals of Arkansas.

May 30, 2012.

Patrick R. James, James, Fink & House, P.A., Little Rock, for Appellee/Cross–Appellant.

RITA W. GRUBER, Judge.

This case has returned to us after we remanded it for supplementation of the record and rebriefing. *Beck v. Inter City Transp., Inc.,* 2012 Ark. App. 147, 2012 WL 474682. The issues now before us involve the interpretation of two Arkansas statutes: Ark.Code Ann. § 26–54–112 (Repl.2008), which governs the reinstatement of a corporate charter; and Ark. Code Ann. § 16–22–308 (Repl.1999), which authorizes an award of attorney's fees in contract cases. Appellant, Alvin M. Beck, appeals the trial court's denial of his motion to dismiss this case under Ark. R. Civ. P. 12(b)(8) on the basis of a similar lawsuit he filed against appellee, Inter City Transportation, Inc., in another county. Inter City cross-appeals the court's order denying its request for attorney's fees and granting appellant's request for an equitable lien. We affirm on direct appeal. On cross-appeal, we affirm the court's imposi-tion of an equitable lien, but we reverse and remand its denial of attorney's fees.

## I. *Direct Appeal*

The relevant facts are these. The parties entered into an agreement pursuant to which Beck agreed to sell and Inter City agreed to buy two complete engines for which Inter City already had a buyer. Beck delivered the engines and Inter City paid $14,500.[1] Shortly thereafter, Inter City discovered that one of the engines was not complete and it was unable to sell the engines to the intended overseas buyer.

On August 4, 2010, Inter City filed a complaint against Beck in Pulaski County, alleging that Beck's actions constituted "breach of contract including among other things, but [sic] the engines were not fit for their intended purpose" and "fraud as a result of Defendant's failure to disclose the condition of the engines." At the time Inter City filed suit, its corporate charter had been revoked for failure to pay franchise taxes. On August 14, 2010, Beck filed a complaint for declaratory judgment on similar issues against Inter City and its principal, Gerry Issioffia, individually, in Monroe County. On August 20, 2010, Beck filed a motion to dismiss Inter City's complaint in this case, alleging that Inter City did not have standing to bring this action because its corporate charter had been revoked. On August 30, 2010, Inter City filed a response to Beck's motion to dismiss, attaching evidence that its corporate charter had been reinstated and that it was in good standing. On February 1, 2011, Beck filed an amended motion to dismiss pursuant to Arkansas Rule of Civil Procedure 12(b)(8), arguing that his Monroe County action was still pending and had been filed while Inter City was not in good standing. Thus, Beck argued, his

---

1. Inter City paid a total of $14,650, which included a $150 delivery fee.

intervening rights occurred before Inter City's charter was reinstated and could not be defeated by Inter City's reinstatement. The court denied Beck's amended motion to dismiss and found for Inter City on its complaint.

█ Beck's sole issue on appeal is that the court erred in finding that Ark.Code Ann. § 26–54–112's provisions regarding retroactivity applied to defeat the rights that he acquired during the period of forfeiture. Specifically, he argues that he acquired a vested right in his Monroe County lawsuit against Inter City and Mr. Issioffia, individually, and that this right cannot be defeated by the reinstatement provisions of Ark.Code Ann. § 26–54–112.

We review a trial court's decision involving the interpretation of a statute de novo on appeal. *CNA Ins. Co. v. Ark. Children's Hosp.*, 2011 Ark. App. 671, 386 S.W.3d 631. Arkansas Code Annotated section 26–54–112 provides in pertinent part:

(a)(1)(A)(i) Any corporation whose charter or permit authority to do business in the state has been declared forfeited by proclamation of the Governor or the Secretary of State may be reinstated to all its rights, powers, and property.

(ii) Reinstatement shall be retroactive to the time that the corporation's authority to do business in the state was declared forfeited.

In a lawsuit involving facts similar to those in this case, the supreme court held that, under the plain language of Ark.Code Ann. § 26–54–112, "reinstatement of the corporate charter shall be retroactive to the date of its revocation." *Omni Holding and Dev. Corp. v. C.A.G. Invs., Inc.*, 370 Ark. 220, 227, 258 S.W.3d 374, 380 (2007). The court held that section 112's restoration of the corporation's corporate status in *Omni* vested it with continuous existence as though revocation of its charter

had never occurred. *Id.* at 228, 258 S.W.3d at 380. Consequently, the court affirmed the trial court's denial of appellant's motion to dismiss for lack of standing in that case. As here, the complaint was filed at a time when the corporate charter of the plaintiff had been revoked.

Beck argues that this case is distinguishable from the facts in *Omni* because Beck filed a similar lawsuit—thereby obtaining vested rights—between the time Inter City filed its complaint and the time Inter City's charter was reinstated. We fail to see a difference of legal significance. The statute, in no uncertain terms, states that reinstatement "shall be retroactive to the time that the corporation's authority to do business in the state was declared forfeited." Ark.Code Ann. § 26–54–112(a)(1)(A)(ii). It provides no exceptions. Moreover, Beck never explicitly provides what "vested rights" he acquired that are so important that they abrogate the effect of a very clearly defined directive of the Arkansas legislature. Further, Beck argues that retroactivity encourages a corporation to play "fast and loose" with the rules and fail to pay franchise taxes because the corporation may later take advantage of the retroactivity provisions; he contends that, if vested rights could not be defeated by the retroactive reinstatement of a corporation's charter, a corporation would have more incentive to pay franchise taxes when due. Regardless of the merits of Beck's policy argument, the legislature has spoken. We have no authority to legislate or to construe a statute to mean anything other than what it says. *Nat'l Baptist Convention, U.S.A., Inc. v. Ark. Emp't Sec. Div.*, 3 Ark.App. 189, 192, 623 S.W.2d 852, 854 (1981). Thus, we affirm the trial court's denial of Beck's motion to dismiss.

## II. *Cross-appeal*

█ We turn now to Inter City's cross-appeal. Its principal argument on cross-

appeal is that the trial court erred in denying its motion for attorney's fees under Ark.Code Ann. § 16–22–308, which provides that the trial court may award attorney's fees to the prevailing party in

> any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action.

In order to understand the parties' arguments, we turn to Inter City's complaint and to the trial court's judgment. Inter City alleged in its complaint that it had engaged in business transactions with Beck whereby Inter City would buy engines from Beck for shipment overseas. On May 3, 2010, Inter City purchased two engines from Beck for a total price of $14,650. The complaint averred that, although Inter City asked to inspect the engines at the time of purchase, Beck said that he did not have the appropriate tools at the time. When Inter City received the purchased engines and opened them, it discovered that the engines were "essentially empty," containing no pistons or rods. Inter City alleged that these actions constituted breach of contract and fraud and prayed for recovery in the amount of $14,650 plus interest, attorney's fees, and costs.

The court held a hearing on February 17, 2011, and entered an order on February 28, 2011, finding for Inter City "as to its causes of action in its complaint." The trial court made the following findings of fact and rulings:

a. Plaintiff and Defendant had established a prior business relationship and course of dealing.

b. Defendant knew that Plaintiff desired to purchase two complete core engines.

c. Plaintiff agreed to purchase from Defendant what Plaintiff thought were two complete core engines, for a price of fourteen thousand five hundred dollars ($14,500.00), plus one hundred fifty dollars ($150.00) for shipping, for a total purchase price of fourteen thousand six hundred fifty dollars ($14,650.00).

d. Defendant knew that Plaintiff had a buyer for both engines.

e. At the time of the agreement to purchase, Plaintiff inspected the 16V71 core engine and opened the valve covers. The valve covers were not removed from the 12V149 core engines.

f. Plaintiff discovered, after the fact, that the 12V149 core engines did not have sleeves and connecting rods. As a result, Plaintiff lost its purchaser for both engines.

g. Plaintiff agreed to purchase and in fact bought what it thought was a complete engine core.

h. The engines were sold "as is" but as complete engines.

i. However, the 12V149 *did not conform for its intended purpose.* [Emphasis added.]

j. *Plaintiff is therefore entitled to a refund* from Defendant in the amount of fourteen thousand six hundred fifty dollars ($14,650.00). However, Defendant is entitled to a credit in the amount of one thousand five hundred dollars ($1,500.00), for a total amount due Plaintiff by Defendant of thirteen thousand one hundred fifty dollars ($13,150.00). [Emphasis added.]

k. Upon payment of the Judgment in full, Defendant shall be entitled to

the return of both engines. It will be Defendant's responsibility to pick up the engines at their present location.

Inter City then filed a motion for an award of attorney's fees under Ark.Code Ann. § 16–22–308 as the prevailing party in an action based primarily, if not exclusively, in contract. At a hearing on the matter held on March 30, 2011, Beck's counsel argued that the court's judgment granting Inter City's relief effectively amounted to rescission because the court gave Inter City its money back and gave Beck his engines. Accordingly, Beck's counsel argued that, under *Hudson v. Hilo*, 88 Ark.App. 317, 198 S.W.3d 569 (2004), attorney's fees were not |₇allowed. Beck quoted the following sentence from *Hudson:* "Both parties agree that Ark. Code Ann. § 16–22–308 (Repl.1999), which allows for attorney fees in cases involving various actions such as breach of contract and negotiable instruments, does not allow attorney fees in contract rescission cases." *Hudson*, 88 Ark.App. at 323, 198 S.W.3d at 573. Inter City argued that rescission was not pleaded and that it had requested and received damages. Counsel for Inter City said that the reason for return of the engines was that Beck asked for return of the engines after the court's oral ruling, and he (Inter City's counsel) said, "Sure, I don't care." He added that, to his client, "[T]hey're clumps of metal. They have no value to us."

The trial court stated that whatever was said at the earlier hearing, it had always intended to return the engines to Beck if it "awarded the plaintiff the damages." According to the trial court, the parties simply ended up agreeing to do what the court intended to do. "No matter how that came about, the court's intent was to rescind the contract and put the parties back in a status quo situation." The court then concluded, "I think I will leave the parties where they are as it relates to attorney's fees and I will not make an award based upon the Court's intent to rescind the contract and put the parties back in status quo. The motion for attorney's fees will be denied." In its written order, the court stated that it denied Inter City's motion for attorney's fees "on grounds that the Court's previous judgment was in the nature of a recision of contract."

■ While an award of attorney's fees lies within the trial court's discretion and we will not reverse the denial of a motion for fees absent an abuse of that discretion, *Taylor v. George*, 92 Ark.App. 264, 274–75, 212 S.W.3d 17, 25 (2005), it appears that the trial court in this case |₈was misguided as to the law governing its discretion. In the only case provided to the trial court at the hearing, *Hudson v. Hilo*, this court affirmed an award of attorney's fees under Ark.Code Ann. § 16–22–308 because the Hilos, defendants in that case, were the prevailing parties in a foreclosure action. 88 Ark.App. at 323, 198 S.W.3d at 573. In dicta, the court stated that the parties agreed that attorney's fees pursuant to Ark.Code Ann. § 16–22–308 were not allowed in "contract rescission cases," citing *Barnhart v. City of Fayetteville*, 335 Ark. 57, 977 S.W.2d 225 (1998), and *Friends of Children, Inc. v. Marcus*, 46 Ark.App. 57, 876 S.W.2d 603 (1994). *Id.* Neither *Hudson* nor the cases cited in *Hudson* stand for the blanket legal proposition that section 308 attorney's fees are never authorized when a court grants rescission.

■ Rescission is a remedy: it may be used in either contract cases or tort cases. *See* 2 Dan B. Dobbs, *Law of Remedies* § 9.1 (2d ed.1993) (remedies for misrepresentation); 3 Dan B. Dobbs, *Law of Remedies* § 12.7(1) (2d ed.1993) (remedies for breach of contract). It is basic contract law that where there is a material

breach of a contract, substantial nonperformance, and entire or substantial failure of consideration, the injured party is entitled to rescission of the contract and restitution and recovery back of money paid. *Econ. Swimming Pool Co. v. Freeling,* 236 Ark. 888, 891, 370 S.W.2d 438, 440 (1963). Whether an award of attorney's fees is appropriate under Ark.Code Ann. § 16–22–308 depends not on whether the remedy of rescission was granted but on whether the case is one primarily based on breach of contract. *Jiles v. Union Planters Bank,* 90 Ark.App. 245, 247, 205 S.W.3d 187, 189 (2005).

In *Hudson v. Hilo,* the Hudsons filed a complaint in foreclosure and the Hilos counterclaimed for rescission of the real-estate contract alleging misrepresentation, a tort. No breach-of-contract claim was alleged. Furthermore, neither of the cases cited in *Hudson–Barnhart v. City of Fayetteville,* 335 Ark. 57, 977 S.W.2d 225 (1998), or *Friends of Children, Inc. v. Marcus,* 46 Ark.App. 57, 876 S.W.2d 603 (1994)—involves the remedy of rescission in a breach-of-contract case.

*Barnhart* was an illegal-exaction case in which the attorney was awarded fees under Ark.Code Ann. § 26–35–902(a) (Repl. 1997), which authorizes attorney's fees to winning litigants in illegal-exaction cases. 335 Ark. at 59, 977 S.W.2d at 226. Not satisfied with the award, Barnhart moved for additional fees under Ark.Code Ann. § 16–22–308. The trial court denied the request, finding that her contention that her action "concerned a contract" did not make it an action on a contract or a breach-of-contract case. Her lawsuit established that the contract to which she referred, and to which she was not a party, was ultra vires and void. The supreme court affirmed, holding that the complaint was not primarily based on a contract but on an illegal exaction and that she failed to raise any breach-of-contract claim or request damages in her earlier case on appeal. The court held that she could not now recharacterize her case as a contract case.

The complaint in *Friends of Children* alleged fraud and sought rescission and restitution of an adoption fee. 46 Ark. App. at 59–60, 876 S.W.2d at 605. The plaintiffs alleged that the adoption agency was unjustly enriched when it twice collected a fee for placement of the same child. The trial court found that the adoption agency had been unjustly enriched and awarded judgment to plaintiffs and attorney's fees. We held that the parties had effectively rescinded their contract by agreement and the trial court had granted restitution. The court held that the award was based on unjust enrichment and the concept of "quasi-contract," which is not a contract at all but a contract implied-in-law. The court held that this was not an appropriate basis for an award of fees under Ark.Code Ann. § 16–22–308.

While not at issue in the case, the trial court awarded attorney's fees in *Jacks v. Western Secured Invs. Co.,* 73 Ark.App. 437, 43 S.W.3d 229 (2001), in which Western, the mortgagee in a real-estate transaction, alleged breach of contract against the Jackses, the sellers. Miller, the buyer, intervened in the lawsuit seeking rescission of the contract. The trial court found that the Jackses had breached the contract with Miller, that Miller was entitled to rescission of the contract, and that Miller was entitled to attorney's fees. The court also awarded damages and attorney's fees to Western, finding that the Jackses had breached the contract with Western. *See also Sunbelt Exploration Co. v. Stephens Prod. Co.,* 320 Ark. 298, 896 S.W.2d 867 (1995) (affirming award of attorney's fees under Ark.Code Ann. § 16–22–308 in an equitable action by

lessors seeking cancellation of lease agreements due to lessees' alleged abandonment and breach of implied-lease covenants); and *Childs v. Adams,* 322 Ark. 424, 909 S.W.2d 641 (1995) (holding award of attorney's fees under Ark.Code Ann. § 16–22–308 was not precluded in equitable action for specific performance of a contract). It is clear that an equitable remedy in a breach-of-contract case is not a bar to recovery of fees under Ark.Code Ann. § 16–22–308.

■ Accordingly, whether the court was authorized to award attorney's fees in this case depends on whether the case was primarily one based in contract or in tort. Inter City's complaint alleged "breach of contract including among other things, but [sic] the engines were not fit for their intended purpose" and "fraud as a result of Defendant's failure to disclose the condition of the engines." In either case, rescission could have been granted. The court's order found in relevant part that Beck knew Inter City desired to purchase two complete core engines; that Inter City agreed to purchase from Beck what it thought were two complete core engines for a total purchase price of $14,650.00; that Beck knew Inter City had a buyer for both engines; that, because one of the engines did not have sleeves and connecting rods, Inter City lost its purchaser for both engines; that the engines were sold "as is" but as complete engines; that the 12V149 did not conform for its intended purpose; and that Inter City was therefore entitled to a refund from Beck in the amount of $14,650.00. The court then ordered that, upon payment in full, Beck was entitled to the return of both engines. The court's finding was that the engine did not conform for its intended purpose, a breach-of-contract claim. The court made no finding that Beck knew but failed to disclose the condition of the engines. The

order appears to be based primarily on Beck's breach of contract.

At the hearing, Mr. Issioffia testified that the parties agreed for Beck to sell him two complete core engines and that one of the engines he received was not complete. He said that he filed the lawsuit because he "did not receive what [he] contracted to purchase from [Beck]." He said that he sued in contract and fraud and that the basis of his fraud claim was that he thought Beck acted intentionally when he failed to get the tools to open the defective engine. On cross-examination, he said that he wanted the money he had paid and did not want to keep the engines. He said that he was not a mechanic and that Beck could have the engines back. Beck testified that he knew Inter City wanted complete core engines and that he thought the engines he sold to Inter City were complete.

In its oral ruling from the bench, the court found that the parties had an agreement for the sale of complete core engines, that one of the engines did not conform, and that Inter City therefore "suffered damages proximately caused by the defendant's failure to provide conforming goods." After the court granted judgment, Beck's attorney asked, "What about the engines, Your Honor?" The court replied, "Upon payment of the judgment amount, Mr. Beck is entitled to return of both engines." The word "rescission" was never mentioned.

After the order was entered, Inter City's attorney filed a motion for attorney's fees pursuant to Ark.Code Ann. § 16–22–308 as the prevailing party in an action based primarily in contract. At the hearing on the motion, Beck did not dispute the reasonableness of the fees requested but argued that the court granted the remedy of rescission and, therefore, under *Hudson v. Hilo,* attorney's fees were not allowed un-

der section 16–22–308. Inter City's counsel argued that Inter City sued for damages, that the court awarded damages, and that rescission was neither pleaded nor mentioned in the lawsuit. He said that his client agreed to return the engines because they had no value to him. The court said that its intention was "if I awarded the plaintiff the damages, the defendant was going to get the motors back. You all ended up talking about, doing, and agreeing to what was the Court's intention. No matter how that came about the Court's intent was to rescind the contract and put the parties back in a status quo situation." The court then denied the motion for attorney's fees based on its intent to rescind the contract.

The court's order and its oral findings indicate that this case sounded primarily in contract, rather than in tort. As discussed herein, the remedy of rescission in a contract case does not foreclose section 16–22–308's authorization for attorney's fees in a breach-of-contract case. Because dicta in *Hudson v. Hilo* appears to have misled the court as to the law regarding the applicability of section 16–22–308 to rescission cases, we remand for the court to consider the motion for fees in light of this opinion.

 The second issue on cross-appeal also arises from the court's order denying Inter City's motion for attorney's fees. In that order, the court also granted Beck's request for an equitable lien on the two engines. Inter City argues on cross-appeal that we should reverse this award because the action was one in law rather than equity. Inter City has provided no legal support for its argument, and we have found none. Circuit courts operate as courts of law and courts of equity, maintaining jurisdiction that, before Amendment 80 to the Arkansas Constitution was adopted in 2000, existed in the chancery and circuit courts. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 533, 203 S.W.3d 88, 92 (2005). Thus, a circuit court may fashion any reasonable remedy justified by the proof. *Jones v. Ray*, 54 Ark. App. 336, 338, 925 S.W.2d 805, 807 (1996). In this case, regardless of whether Inter City requested the remedy it received, the court stated that it intended to grant the remedy of rescission and to put the parties back in "status quo." Then, continuing to do equity, the court granted an equitable lien on the engines to Beck. Both actions were within its judicial authority. Therefore, we affirm its order granting an equitable lien.

Affirmed on direct appeal; affirmed in part and reversed and remanded in part on cross-appeal.

GLADWIN and ROBBINS, JJ., agree.